In this matter, during voir dire, several of the jurors expressed fear that this was a gang-related case. They expressed fear that they might be meeting the defendant and some of his family or friends or witnesses in the hallways. They expressed fear of being a juror. They expressed fear of going in the same hallway as the defendant and his associates. The judge tried to assure them by telling them that maybe they can go up and down a different elevator and out a different exit. In this context, the government was allowed to present an expert, and this expert is Stradley, on gangs. And Stradley testified that the defendant not only was a gang member of the Hoover Crips, on the night of his arrest on August the 8th of 2005, he was out in public wearing gang colors. And then Stradley was allowed to say that members of this gang who wear gang colors in public expect to have trouble, expect to confront other gang members. And in that expectation, they will carry guns. Not only will they carry guns, but they will have friends carry guns in case they're afraid of being caught with a gun. They expect trouble. They expect armed confrontation. And when there is armed confrontation, they expect their friends to help them. They expect to be asked to help their friends. And after the confrontation, they expect to help their friends escape the police, lie for their friends, and dispose of the evidence. So given the start of this juror's expressed in open court fear of gangs, of the evidence in this case, you have an expert testifying about this person here, this defendant, as part of a gang that engages regularly in unprovoked warfare, violent armed warfare. This is not a Daubert challenge, though. This is a 403 challenge? Both. The defense filed both motions challenging the testimony both on 403 and on Daubert. The court made a written decision on both. Well, I'm sorry. I'm trying to, well, answer Judge Fletcher's question. It's actually both. It's both a 403 and a Daubert challenge. And have you raised Daubert as part of the appeal? Yes, I raised both. I raised both. And what I was getting to is that the defense in the lower court raised both in a separate motion imposed by the government. But I want to go back to your first argument because I'm not sure I follow it. A lot of people are concerned about gang warfare. I'm sorry. A lot of people are concerned about gang warfare, right? I mean, they're concerned about homicides. They're concerned about this or concerned about that. That's not unusual. It would be unusual to get a group of jurors who were insensitive, in some sense, to gang warfare. I mean, they just had no opinion about it at all, especially in a metropolitan center. Okay? So you're not going to pick a jury that doesn't have some attitudes towards gang warfare. Is it your argument that if you do have a jury that is picked and they have demonstrated in their variety or otherwise that they're concerned about gang warfare, in that case you shouldn't allow expert testimony on the subject because it would be too prejudicial? I was trying to marry your two thoughts, and it seemed to me that the logical conclusion doesn't follow from that of leaving that evidence out. And what I was doing is actually setting the stage for my conclusion about prejudice and having to show that the air and admission of this evidence had a prejudicial impact on the jury, and that's why I brought up the jury in the beginning. But let me answer your question, if I could. The cases that both the government and I have cited allow the government to bring in evidence of gang affiliation, gang membership, to show a current relationship with the other people the person was with to show that because there's a current relationship they may have been involved in activities together. What this is, is this is an expert testifying about the prior bad acts of other people using those prior bad acts to infer the actions of the defendant on the night of August the 8th. Wasn't the issue whether your client actually had possession of the gun? Yes. And didn't the thrust of the testimony go to show why it would be that he could have logically had possession of the gun even though it wasn't on his possession at the time, in his possession at the time? Well, yes, but again, I mean, what the – Let me put it this way. Are you saying that the district court abuses discretion on the basis setting aside prejudice, that it wasn't relevant, that it wasn't probative, that it shouldn't have come in under Rule 403? Yes. Okay. Because – take the prejudice out of it, just, you know, that it didn't meet the threshold of admissibility under Rule 403. Yes, exactly. Because the expert and the court were using the behavior of other people to show, to create an inference that on the night that this happened, that the defendant behaved in a similar pattern, there's a similar sequence of events. That the defendant must have engaged in. Because what the police had was they drove up to this van. They saw Mr. Hudson in the passenger seat. They saw a man in the back part of the van run out holding two guns. So in order to get possession, whether it's joint, constructive, or actual, there had to be a prior sequence of events that happened to put the passenger, Mr. Hudson, in possession. But that's always the case. I mean, with testimony about gangs, of course, you're right that you are then, once you say this person is a member of gang X or gang Y, you say, well, why is that important? You say, because this is the way gangs behave. They come to each other's aid, as an example. That's a specific act. I mean, you'd have to prove that's the way they behave. And I don't disagree at all. And in the case law, as I've mentioned, cited by both counsel, and I think we pretty much cite the same cases, the cases stand for the proposition that gang membership can be used to show that relationship. And because of the relationship, there's a possibility or probability that you have acted in concert. The only cases that allow for an extensive development in court of gang behavior and patterns of behavior are in a different context. And one of them is the other versus Abel, and the other is versus Tupper that we both mentioned. And that has to do with when a witness, their bias is being shown. So if a witness gets on the stand and testifies that the defendant was not part of this particular crime, then the government has been allowed to cross-examine that witness to show bias and to show the full extent of the gang behavior, to show the extent of the bias. But as in the Supreme Court case in Abel points out, that is to show bias, not an element of the crime. In this particular case, there's no law, decisional law, that has allowed a trial court to introduce a whole pattern of behavior of other people to show the defendant on this day acted in conformity with the behavior of others. As far as, I'm running out of time, let me get to one other point. And that's the obvious issue of whether or not this affected the verdict. And the government had DNA evidence and the government had fingerprints. That evidence only shows that the gun was touched. Even one of their own experts said that the DNA evidence can be transferred without the person actually touching. But what it shows is the gun was touched. It shows no other context. In order to show legal accuracy to the defendant's case. Breyer. Isn't it a reasonable inference that the gun was touched in a case in which there were, what, 55 shots fired from the van or some enormous number? Isn't there a reasonable inference a jury could draw that in some manner the defendant this fits an aiding and abetting standard? Well, yes, it's a reasonable inference. And it's a reasonable inference in the fact that they were both at the scene earlier. But what I'm, the point I'm trying to make is that in the context of the fingerprint being there, the DNA being there, that could have come from, one, a person actually holding it and bringing it out and shooting it. One context. Another context is a person shoves it at you and touches it with his hand. You have not, in the second example, exhibited control over the gun. Your print simply appears on it. So the fingerprint alone doesn't show, by itself, it doesn't show the context and it doesn't show the legal control. The story that the expert told about this pattern of behavior, that creates the context. And that's the most powerful evidence of creating that context. Why don't we go from the other side and then we'll give you a minute to respond. Thank you. May it please the Court, good morning. Tom Evans for the United States. I'd like to start with defining what the appellant's appeal is in this case. It was a very narrowly tailored appeal. If one looks at the summary of the defendant's argument at page 13 of his single brief in this case, it raises four particular complaints with the expert witness's testimony. This doesn't contain a Daubert challenge, and it doesn't contain an objection to the larger body of evidence that was received in this trial concerning defendant Hudson's gang affiliation and his ties. It's very narrowly tailored to four specific issues that the gang expert testified to. Furthermore, the precedent of this circuit is very clear that the review process is considerably deferential to the district judge who made the decisions on what to allow into evidence in this case. There were three layers of scrutiny. Judge Breyer will remind us of that time and again, I can assure you. Yes, Your Honor. It's two to one. There were three layers of scrutiny given to these issues by Judge Brown in the case. There was the initial motion in limine that went to the gang evidence as a broad category four months before the trial with an opinion rendered by the court authorizing admission of particular evidence. The parties then got into litigation about Daubert challenges on a whole host of expert witnesses as the court can recognize from the record. We had DNA, fingerprints, firearms, tool mark, and a gang expert proposed. The court rendered an opinion on the Daubert challenge and, including in that opinion, analyzed the affidavit that had been submitted by Officer Stradley proposing his testimony. It was a clear summary of his testimony. Then during the trial, in a colloquy, in a witness preceding the gang expert's actual testimony, which is found at ER pages 62 through 85, Judge Brown gave considerable scrutiny to the very specific topics that the defendant now complains of. And we submit that this evidence was fully admissible under the umbrella of cases, many of which come from the Ninth Circuit, but begin with the case in the U.S. Supreme Court, United States v. Abel. What Abel, and particularly Hanke in this circuit, authorized in terms of admissible evidence was testimony in the Hanke case from a gang expert about tenants of the gang. And what was authorized here through Officer Stradley was tenant evidence, rules and behaviors of this particular gang that were outside of the realm of the knowledge of the jurors under 702. This was not evidence that they would appreciate from their lay capability, but evidence that he as an expert witness could assist them with in making decisions. That evidence was clearly relevant and clearly probative on the basis of the two theories of possession that the government had in this case. There was an actual possession theory, which was primarily founded in the forensic evidence. We had powerful DNA evidence. One in 255 trillion were the numbers on that DNA evidence from swabs taken from the hand grips of that particular firearm that showed that Mr. Hudson and no one else had been the person whose DNA was on that weapon. The fingerprint in this particular case was found on the slide of the weapon, only consistent with having been squeezed by that middle right finger of Mr. Hudson's as he manipulated the slide, which was shown during the evidence in the trial to have been, would have been done by opening or closing the slide to either eject or load around. This wasn't inadvertent touching. That suggestion was made in cross-examination. It was never brought forward in any evidence before the court, and it was not a reasonable doubt brought on by the defendant. Can I, okay, I think I take your point there, but I'd like to come back. You cite Abel. Abel was an impeachment case, was it not? It was, Your Honor. And that's a bit different from what the testimony is used here. There, in that case, there was a defense witness who had been put on. The government wanted to impeach his credibility, and the court said that was appropriate to show that gang members will lie and cheat and do all sorts of stuff. That's a little different from what you're asking for here. You're saying that you want to show a substantive violation by the defendant where he wasn't found in actual possession or control of the weapon, but you're going to use this expert to say that gang members routinely share weapons among themselves. Therefore, because of that conduct, you can infer that this person who was not found with the gun, there was the fingerprint. You've just addressed that. But you can fill in this big gap in our proof by a sort of pattern of practice, maybe. That's a big stretch from Abel, wouldn't you say? I agree with the Court that there's a distinction between Abel in this case and that it was used in that case for impeachment, but I don't believe that Abel stands for the proposition that you could not use it towards an element of the crime. Well, I don't think it stands for the proposition that you can. I mean, it may, but it's an extension. You were invoking it for the latter, not the first. But, Your Honor, several other cases do, particularly Santiago, a precedent of this circuit, where it was used to prove motive of the crime, similar to what we were asking Judge Brown to admit the evidence for here. In that case, it was a prison murder case, and several details, very specific details about that defendant's behavior and actions preceding the particular crime were admitted towards proving the elements of the offense. Fagan. Isn't your view that it would be harmless error in any event? Yes, Your Honor. We simply don't concede error in this case. I understand. But it was harmless error, if the Court were to take that view, because of the abundance of evidence proving the actual possession on the part of the defendant that came from the forensic evidence and the gang evidence that hasn't been objected to. The affiliation evidence was critical to the jury understanding that these three men who ended up in a band together weren't there fortuitously, that they were there because they were part of a team and had just fled a shooting incident in which two of the weapons fired in that five-weapon incident had fired 20 rounds, and that they had fled together in common clothing as a member of a team. And it went not only to their motive to possess the firearms, but the joint enterprise that involved Mr. Hudson as an actual possessor, but also as a joint or constructed possessor of those weapons when they were in the band. If you go to the record, there's very clear evidence about actions of all three of those men in the band at the time they were stopped by the police on the steel bridge crossing the Willamette River here in Portland. The defendant was in the front right seat, passenger seat. Mr. Jones was driving. DeAndres Brown, who ended up fleeing the band later on with the weapons in his hand, was in the back seat trying to get out of the door. Mr. Hudson was facing him. And there was every reasonable inference to believe that they were in this together and that Mr. Brown was acting on behalf of the others to dispose of evidence that had just been used in the commission of a violent shooting. And so all of those facts are not part of the objection that's in this appeal. And if the defendant hasn't raised something in his opening brief, then he's barred from raising it here. That's a rule of this circuit from the Ankeny case. And so I submit that on that analysis, the harmless error analysis, there was an abundance of other evidence here. I believe his comments about the jurors and their fear of gangs is simply overstated because this case was going to involve gang evidence of one kind or another, whether it's this evidence that he complains of or not. Those concerns would have been attended to this trial regardless of what occurred. Fifty shots were fired. Five weapons were used. There was considerable effort on the part of the government to keep out of concern to the jury in this case the principal aspect of this case, which was a homicide. We agreed that that was not probative towards proving Mr. Hudson's possession in this particular case. I note that in the government's brief. That whole homicide episode, because it occurred about a block and quarter away from where Mr. Hudson would have fired the 9-millimeter weapon that we say he possessed and the jury convicted him of possessing, was attenuated enough to be able to keep that part of the episode out of the jury's view. And so considerable efforts were made not only by the government but particularly by Judge Brown in being mindful to the concerns that were attended to a case of this type. And I submit that she did not abuse her discretion, that considerable deference ought to be given to her decision-making and the care that she gave to it, and that her actions of admitting this expert testimony under the rules of this circuit was not manifestly erroneous, which is the standard that I brought to the Court's attention in the standard of review section. I've run out of time. Thank you very much. Here you are, almost to the second. Thank you very much. Would you like a minute? Well, just very briefly, Your Honor. I may be mistaken, but as far as the fingerprint, my reading of the transcript is that the testimony was that the fingerprint was found underneath the safety. The government has gone further and said that it shows that it can only be consistent with manipulation of the slide. I don't recall that being in the testimony. Were you trial counsel? I was not. I do not believe he was. Yeah. But I don't believe it was part of what I see in the transcript anyway. No, we're, of course, restricted in the transcript. As far as the case law is concerned, I do not believe that there's any case law to support this use of gang behavior. The Santiago case that is cited, the Santiago case that is cited, deals with the confessions of a prison gang member and his own confession that he was killing in order to become a member of the gang. That's how it came up. It was his own statements. Gang affiliation, when two people are together, may show a relationship, but it doesn't show that link that the person actually possessed that gun. Okay. You're over your minute. If you've got a sentence you'd like to finish up with. Okay. Thank you very much. Thank both of you for your useful argument. The case of the United States v. Hudson is now submitted for decision. The next case on the calendar is United States v. I'm not sure I'm going to pronounce this one correctly, Covarrubias. Thank you.
judges: Fletcher, Fisher, Breyer